**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21-CR-138-ABJ |
| v. | Cts 1-4:  18 U.S.C. § 1343 (Wire Fraud) |
| JOHN ELDON RIMMASCH, (Counts 1-5) | Ct 5:  42 U.S.C. § 7413(c)(5)(A), 18 U.S.C. § 2 (Knowing Endangerment) |
| and | |
| WASATCH RAILROAD CONTRACTORS, (Counts 1-5) | **FORFEITURE NOTICE** |
| Defendants. | |

---

**INDICTMENT**

---

THE GRAND JURY CHARGES THAT:

*Introductory Allegations*

1.      At all times material to this indictment, Defendant **WASATCH RAILROAD CONTRACTORS** ("**WASATCH**") was incorporated in the State of Wyoming, with its principal office in Cheyenne, Wyoming, and another facility in Shoshoni, Wyoming.

2.      At all times material to this indictment, Defendant **JOHN ELDON RIMMASCH** served as a senior corporate officer of **WASATCH**, with the authority to determine **WASATCH**'s corporate actions and to direct the actions of **WASATCH**'s employees.

3.      At all times material to this indictment, asbestos was listed as a "hazardous air pollutant" under Title 42, United States Code, Section 7412(b)(1).

4.      The Central Railroad of New Jersey Suburban Coach #1021 ("CNJ 1021") is a steel vestibule passenger railcar built by American Car and Foundry in May of 1923.

5.    At all times material to this indictment, CNJ 1021 was owned by the National Park Service, which intended to use CNJ 1021 for passenger excursions at the Steamtown National Historic Site in Scranton, Pennsylvania.

6.    On or about May 24, 2016, the National Park Service issued solicitation P16PS00929, seeking bids to restore CNJ 1021. At the time, CNJ 1021 contained asbestos in various areas. Accompanying the solicitation was a Scope of Work document detailing the intended restoration. Among other things, the Scope of Work gave notice that CNJ 1021 contained asbestos. Furthermore, the Scope of Work included specific requirements related to abatement and removal of the asbestos.

7.    On or about June 27, 2016, **WASATCH** submitted pricing and technical proposals to restore CNJ 1021.

8.    **WASATCH**'s technical proposal, dated June 27, 2016, bore **RIMMASCH**'s apparent signature. Among other things, the technical proposal recited the Scope of Work's requirements related to asbestos abatement, along with **WASATCH**'s response. The technical proposal purported that **WASATCH** "fully understands and accepts the duties" related to asbestos abatement and that **WASATCH** "has extensive experience with asbestos and asbestos abatement" but "will not attempt to do the asbestos abatement portion alone as we do not carry the required credentials for this project." The technical proposal further purported that **WASATCH** "has access to a variety of contractors in Wyoming certified to do the asbestos removal and also the disposal of the asbestos."

9.    **WASATCH**'s pricing proposal, dated June 27, 2016, bore the apparent signature of **WASATCH**'s director of sales and marketing. The pricing proposal itemized $48,591 for asbestos abatement.

10. On or about July 18, 2016, in connection with evaluating **WASATCH**'s proposals, a National Park Service contracting officer requested additional information.

11. On or about July 19, 2016, **WASATCH** submitted a response to the request for additional information, bearing **RIMMASCH**'s apparent signature. Among other things, the response indicated **WASATCH** "thoroughly understands the subject specifications and related plans for solicitation P16PS00929 Restoration of Central of New Jersey No 1021[.]"

12. On or about August 18, 2016, the National Park Service and **WASATCH** entered a contract for **WASATCH** to restore CNJ 1021. The contract incorporated a Scope of Work, which detailed the agreed-upon restoration. This Scope of Work contained the same asbestos-related notice and requirements as the Scope of Work accompanying the solicitation, as summarized in Paragraph 6 of this indictment. The total contract price was $828,871. The contract referenced Wasatch's "proposal dated June 27, 2016 and bid verification dated July 19, 2016."

13. On or about August 31, 2016, the contract was modified, increasing the total contract price to $861,007.

14. On or about September 26, 2016, at the behest of a National Park Service contracting officer, **WASATCH** submitted a schedule of values for the CNJ 1021 restoration. Among other things, the schedule of values itemized $48,591 for "Asbestos Abatement: Removal." Accompanying the schedule of values was a cover letter bearing **RIMMASCH**'s apparent signature and requesting that **WASATCH** be permitted "to invoice based on the percentage of each phase completed."

15. On or about October 11, 2016, CNJ 1021 arrived at **WASATCH**'s facility in Shoshoni, Wyoming, where it would remain at all subsequent times material to this indictment.

*The Scheme*

16.    Between about June 27, 2016, and about January 18, 2017, **RIMMASCH**, with intent to defraud, and acting within the scope of his duties as a corporate officer of **WASATCH**, and intending at least in part to benefit **WASATCH**, knowingly devised and intended to devise a scheme and artifice to defraud the National Park Service and obtain money from the National Park Service by means of materially false and fraudulent pretenses, representations, and promises.

17.    As part of the scheme, **RIMMASCH** induced the National Park Service to enter the aforementioned contract with **WASATCH** by representing that **WASATCH** would restore CNJ 1021 in accordance with the requirements in the Scope of Work, when in fact, **RIMMASCH** did not intend for **WASATCH** to abide by all the requirements in the Scope of Work.

18.    As a further part of the scheme, **RIMMASCH** caused and permitted work to be performed on CNJ 1021, and related to CNJ 1021, without adhering to associated requirements in the Scope of Work, including the removal of asbestos from CNJ 1021 by **WASATCH** employees without proper safety measures.

19.    As a further part of the scheme, **RIMMASCH** caused the submission of invoices to the National Park Service, in which **WASATCH** sought progress payments on the aforementioned contract under the pretense of partial performance in accordance with the Scope of Work, when in fact, **RIMMASCH** knew **WASATCH** had not so performed and was not entitled to such payments.

## COUNTS ONE, TWO, THREE, AND FOUR

20.    Paragraphs 1 through 19 are hereby realleged and incorporated by reference for purposes of charging Counts One, Two, Three, and Four.

21.     On or about the dates alleged below, in the District of Wyoming and elsewhere, the Defendants, **JOHN ELDON RIMMASCH** and **WASATCH RAILROAD CONTRACTORS**, for the purpose of executing the aforementioned scheme to defraud and obtain money from the National Park Service, knowingly caused to be transmitted in interstate commerce by means of wire communication, between the State of Wyoming and other States, certain writings and signals, specifically:

a.  For **COUNT ONE**, on or about December 5, 2016, the Defendants caused an invoice to be submitted to the National Park Service, in which **WASATCH** sought a progress payment of $14,577.30 for "Asbestos and Abatement Removal," even though **RIMMASCH** knew **WASATCH** had not performed asbestos abatement and removal in accordance with the Scope of Work and was not entitled to the requested progress payment.

b.  For **COUNT TWO**, on or about December 16, 2016, the Defendants caused an invoice to be submitted to the National Park Service, in which **WASATCH** sought a progress payment of $12,147.75 for "Asbestos and Abatement Removal," even though **RIMMASCH** knew **WASATCH** had not performed asbestos abatement and removal in accordance with the Scope of Work and was not entitled to the requested progress payment.

c.  For **COUNT THREE**, on or about January 6, 2017, the Defendants caused an invoice to be submitted to the National Park Service, in which **WASATCH** sought a progress payment of $9,718.20 for "Asbestos and Abatement Removal," even though **RIMMASCH** knew **WASATCH** had not performed asbestos abatement and removal in accordance with the Scope of Work and was not entitled to the requested progress payment.

d.  For **COUNT FOUR**, on or about January 18, 2017, the Defendants caused an invoice to be submitted to the National Park Service, in which **WASATCH** sought a progress

payment of $3,401.37 for "Asbestos and Abatement Removal," even though **RIMMASCH** knew **WASATCH** had not performed asbestos abatement and removal in accordance with the Scope of Work and was not entitled to the requested progress payment.

All in violation of 18 U.S.C. § 1343.

## COUNT FIVE

22.    Paragraphs 1 through 19 are hereby realleged and incorporated by reference for the purpose of charging Count Five.

23.    From on or about October 11, 2016, through and including on or about January 19, 2017, in the District of Wyoming, the Defendants, **JOHN ELDON RIMMASCH** and **WASATCH RAILROAD CONTRACTORS**, knowingly caused the release of asbestos, a hazardous air pollutant listed pursuant to 42 U.S.C. § 7412, into the ambient air, thereby at the time knowingly placing other persons in imminent danger of death and serious bodily injury.

In violation of 42 U.S.C. § 7413(c)(5)(A) and 18 U.S.C. § 2.

## FORFEITURE NOTICE

24.    The allegations contained in Counts One through Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

25.    Upon conviction of an offense in violation of Title 18, United States Code, Section 1343 set forth in Counts One through Four of this Indictment, the Defendants, **JOHN ELDON RIMMASCH** and **WASATCH RAILROAD CONTRACTORS**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

6

26.     If any of the property described above, as a result of any act or omission of the Defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL:

**_Ink Signature on File in Clerk's Office_**
FOREPERSON

L. ROBERT MURRAY
Acting United States Attorney

## PENALTY SUMMARY

**DEFENDANT NAME:**       **JOHN ELDON RIMMASCH and**
                         **WASATCH RAILROAD CONTRACTORS**

**DATE:**                November 16, 2021

**INTERPRETER NEEDED:**  No

**VICTIM(S):**           Yes

**OFFENSE/PENALTIES:**

Ct: 1 - 4   **18 U.S.C. § 1343**
            (Wire Fraud)

            0 to 20 Years Imprisonment
            Up to $250,000 Fine
            Up to 3 Years Supervised Release
            $100 Special Assessment

Ct: 5       **42 U.S.C. § 7413(c)(5)(A)**
            **18 U.S.C. § 2**
            (Knowing Endangerment)

            0 to 15 Years Imprisonment
            Up to $250,000 Fine (individual)
            Up to $1,000,000 Fine (organization)
            Up to 3 Years Supervised Release
            $100 Special Assessment

*TOTALS:*                *0 to 95 Years Imprisonment*
                         *Up to $1,250,000 Fines (individual)*
                         *Up to $2,000,000 Fines (organization)*
                         *Up to 3 Years Supervised Release*
                         *$500 Special Assessments*

**AGENT:**               Katharine E. Kovacek, OIG

**AUSA:**                Thomas Szott, Assistant United States Attorney
                         Richard H. Baird, Special Assistant United States Attorney

**ESTIMATED TIME OF TRIAL:**   More than 5 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS
CASE:**                          No

**ARE THERE DETAINERS
FROM OTHER
JURISDICTIONS:**                 No